## KREIDER v. KREIDER.

### April 23, 1836.

### *Case stated.*

A dies intestate, leaving a widow and children, seised of real estate, but insuffi-
cient personal estate to pay his debts. At the time of his death he was indebted to
his children. The widow administered. By agreement between the widow and the
heirs, the latter received the rents and profits of the real estate for ten years. *Held:*
1. In a suit brought by the widow against the heirs for her share of the rents and
profits, in her right of dower, the defendants cannot set off the debt or interest accu-
mulating thereon, due by the decedent to them. 2. Until the creditors of the de-
cedent compel a judicial sale of the real estate for the payment of debts, it is the
right of the widow to receive her full one-third of the rents and profits, although
upon such sale, the sum to be received by her as and for her dower, by the payment
of debts, will be lessened.

THE following case was stated for the opinion of the court in the
nature of a special verdict.

" Anthony Kreider died in August 1826, intestate, seised of cer-
tain real estate. He left a widow, the plaintiff, and two minor chil-
dren, (by a former wife) Frederick and Henry Kreider. Henry
Kreider, the defendant, became the guardian of said minors by ap-
pointment of the orphan's court. By consent of said widow the
plaintiff, he the defendant received the rents of the said real estate
for the use of the said widow and children, in the proportions to which
they are respectively entitled according to law. He has paid said plain
tiff on account of her dower, sundry sums of said rents so received
by him, and after deducting taxes, repairs, and his commissions, &c.,
there is a balance of 428 dollars 34 cents of the moneys in the hands
of the said defendant, collected by him, of said rents ( *prout account
annexed*).

"Anthony Kreider (decedent above named) in January 1825, was
the guardian of his said two minor children, Frederick and Henry,
and as such received the sum of 1318 dollars 92 cents, awarded to
them as their share of their grandfather John Schlatterer's estate in
right of their deceased mother, and gave bond with surety to the
commonwealth of Pennsylvania, dated 22d of January 1825, condi-
tioned for the faithful performance of his duties as guardian, in the
usual form. This money, 1318 dollars 92 cents, has never in fact

[Kreider v. Kreider.]

been paid by said Anthony Kreider or his representatives to any person. The said plaintiff, Mary Kreider, administered to the estate of said Anthony Kreider deceased, in August 1826, and has settled her account, by which it appears there is not sufficient or any personal estate to pay the aforesaid sum of 1318 dollars 92 cents, with any interest that may be due thereon, if any.

"The *narr.* filed in this case is for money had and received by the defendant for the use of the plaintiff, to which the defendant has pleaded *non assumpsit*, payment, set off with leave, &c. (*prout pleadings*).

"The question is, has the defendant the right in law to charge the item of 613 dollars 29 cents in the account annexed, so far as the same affects the claim of the plaintiff? If not, then judgment for the plaintiff."

The item charged in the account, was for interest which had accumulated on the debt of 1318 dollars 92 cents, mentioned in the case stated.

*J. H. Campbell*, for plaintiff, contended that the action is against the defendant in his private capacity, for money received by him for the use of the plaintiff belonging to her; and defendant cannot set off or call in aid as a defence any claim he may have as guardian against the husband of the plaintiff, in right of his wards. All claims cease to be a lien on the real estate of a decedent after seven years. More than ten years have elapsed since the cause of action accrued against the decedent, and the law presumes it paid. Kerper *v.* Hoch, 1 *Watts's Rep.* 1. But until the creditors have proceeded to a sale of the decedent's real estate, the right of the widow to her dower is absolute, without deduction on account of any debts of the decedent. Price *v.* Johnston, 4 *Yeates* 526, 530.

*Miles, contra.*

This case is taken out of the general rule. The heir was at the same time the creditor, and was constituted by the widow an agent to receive the profits of the real estate. While she was the widow she was also the administratrix, and upon a deficiency of personal assets, it was her duty to apply for a judicial sale of the realty for the payment of debts. Act of the 19th of April 1794, *Purd. Dig.*, *tit. Intestate*, and *Orphan's Court*. Although she sues in her own right, yet the different rights being vested in the same per-

son as to both parties, equity will endeavour to effect the objects of the law in this mode of proceeding, especially as it is a fair inference from the case that the plaintiff consented that the defendant, as creditor, should not compel a sale of the real estate, for the benefit of both parties, and therefore impliedly promised she would not take advantage of the delay. For this reason too, the seven years limitation does not apply.

The opinion of the Court was delivered by

STROUD, J.—It was ruled in M'Coy v. Scott, 2 *Rawle* 222, that until divested by a judicial sale, the right of the heirs of an intestate to the lands of which he died seised, is as absolute as that of the intestate was in his lifetime; and therefore that they are entitled to the rents and profits of such lands, even though it shall afterwards appear that the intestate died insolvent. There is no statement of facts accompanying the report of this case, and it is not clear who were meant by the court under the name of *heirs.* Its strict legal acceptation would undoubtedly not include the widow, but as she is entitled, by the intestate act of April 19, 1794, to *one-third* part of the real estate of her intestate husband, during her natural life, where there are children left by the deceased, as in the present case, and they by the same act take the remaining *two-thirds* absolutely, there seems no good reason for discrimination between her right, whilst she continues to live, and the right of the children, in respect to a participation of the profits of the land. And in Price and wife v. Johnston, 4 *Yeates* 526, a widow of an intestate recovered of his heir at law a sum of money which had been awarded by an amicable reference as an annual payment in lieu of her share of the profits of her husband's real estate, but was withheld in consequence of notice that debts of the intestate remained unpaid, equal, as appeared after the heir had received the profits, to the whole value of the estate which the intestate had left. Judge Yeates said : " the defendant here has enjoyed the real estate of Henry Pauling, the intestate, above twelve years, and yet has made but one single payment, of 150 pounds, to his widow. While he holds the lands for his own benefit, no ground can be assigned why the widow's annuity should remain unpaid. The debts due from the intestate are chargeable on his lands on a deficiency of personal assets ; but until the creditors have proceeded to a sale, *the right of the widow to the profits of her share, stands on the same footing as the right of the heir to his share.* It

[Kreider v. Kreider.]

is true the widow's ultimate right of dower must depend on the state of her husband's lands after payment of his debts, but it is *not* true that she cannot recover a temporary share until that object is accomplished. When any part of the lands is sold by legal process, the the share of the widow must proportionably decrease ; *but as between her and the heir she was entitled to one moiety of all the lands until such sale.*" *Page* 530, 531. This decision was in reference to the act of March 23, 1764, the provisions of which, as to the rights of a widow and the heirs of an intestate, do not differ in any important respect from those of the act of the 19th of April 1794. These two decisions determine the question submitted to us. The account annexed to the case stated shows a balance in favour of the widow, which arises altogether from the rents and profits of the real estate left by her husband, and which have been collected by the defendant. This balance is admitted to be due to her, unless the defendant, as guardian of the children of the intestate, can set off the interest which has accrued on a debt due by the intestate to his children in his lifetime. The personal estate having been exhausted by the payment of debts, and the widow having administered on her husband's estate, form the ground upon which the right to make this set-off is claimed. But it has been shown that the widow, in her *own right,* is entitled absolutely to the sum for the recovery of which she has brought this action. There is no pretence, therefore, for the set-off.

In Pringle *v.* Gaw, 5 *Serg. & Rawle* 536, it was decided that the widow of an intestate cannot join with his children in bringing ejectment for the lands to which he was entitled at his decease; and one reason assigned for this is, " that a widow cannot support ejectment for her thirds as dower at common law, and that she cannot for her interest under the intestate laws." This position seems to conflict with the conclusion that she is entitled to a portion of the rents and profits of the real estate in common with the children. But as the act of assembly gives to the children but *two-thirds* of such estate, and one-third is allowed to the wife during her life, and as M'Coy *v.* Scott determines that an administrator, though he collect the rents which accrue after the intestate's death, does not receive them for the *creditors of the intestate,* we are at a loss to perceive why they should be denied to the widow as such. If not hers, they would seem to belong to no one.

Judgment for plaintiff.